PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLAH BURMAN, | ) | |
| | ) | CASE NO.  4:11CV0569 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| JASON STREEVAL, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

*Pro se* Plaintiff Allah Burman filed this *Bivens*[1] action against Elkton Federal Correctional Institution ("FCI-Elkton") Unit Manager Jason Streeval, Special Housing Unit ("SHU") Lieutenant D. Johnson, and Disciplinary Hearing Officer T. Montgomery.  In the Complaint ([ECF No. 1](#)), Plaintiff asserts numerous claims contesting his treatment in FCI-Elkton.  He filed a Supplemental Pleading ([ECF No. 4](#)) on May 4, 2011.[2]  He seeks monetary and injunctive relief.

## I.  Background

Plaintiff received several conduct reports for disobeying orders of staff members in January and February 2011.  On January 4, 2011, Plaintiff was cited for refusing a program

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] The pleading is titled "Amended Complaint;" however, review of the pleading clearly demonstrates that Plaintiff did not intend it to take the place of the original Complaint.  Instead, he intended to supplement the claims alleged in the original pleading.

(4:11CV0569)

assignment.  He was called to health services to provide a DNA sample pursuant to the DNA Analysis Backlog Elimination Act, 42 U.S.C. §§ 14135-1435e.  He refused to cooperate.  A disciplinary hearing was conducted by Montgomery.  Plaintiff was found guilty of the violation and was sanctioned with 15 days in segregation, loss of 13 days of good time, 1 year loss of privileges and 1 year loss of telephone privileges.  ECF No. 1 at 7, ECF No. 5 at 6.

A second incident occurred on January 28, 2011.  Officer Streeval was making his rounds through the segregation unit at 8:00 a.m.  He noticed Plaintiff was still lying in his bunk, covered by blankets.  Streeval knocked hard on the cell door and told Plaintiff to wake and move so that he could verify Plaintiff was in fact under the blanket.  Plaintiff ignored the officer.  Streeval knocked again and addressed Plaintiff by name.  He once again indicated his need to see some part of Plaintiff's body.  Plaintiff remained under the blanket.  Lieutenant Johnson was notified of the situation.  The officers videotaped Plaintiff for two hours, to see movement or compliance with the order.  At 10:00 a.m., officers returned to his cell and again knocked loudly on the door.  He was ordered to come to the door to be handcuffed.  He once again ignored their requests.  A force team was then sent into the cell to extract Plaintiff.  He claims he was sprayed with pepper spray, and then placed in handcuffs and ankle restraints.  He was taken to the showers where Lieutenant Johnson ordered Officers to cut off Plaintiff's clothes.  He was then escorted, naked, to a holding cell.  He was given a pair of underwear that were too large for him, and was left in the cell in restraints until approximately 2:00 p.m.  He claims the cell was cold.  He states he was not given lunch and was not taken to the restroom during this time.

2

(4:11CV0569)

Plaintiff was issued two conduct reports as a result of this incident.  ECF No. 1 at 6, ECF No. 5 at 10, 16.  After a disciplinary hearing conducted by Montgomery, Plaintiff was sanctioned with a total of 15 days in segregation, loss of 5 days good time credit, and loss of 8 days of non-vested good time credit.  ECF No. 5 at 10, 16.

Plaintiff was issued another conduct report on February 9, 2011.  ECF No.1 at 7, ECF No. 5 at 13.  An officer approached Plaintiff and told him that his cellmate had been given a bottom bunk pass.  He was told to move to the top bunk.  Plaintiff declined to move and was charged with refusing to obey the order of a staff member.  Plaintiff would not cooperate with the disciplinary hearing and was sanctioned with 30 days in segregation, loss of 4 days good time credit, and loss of 23 days of non-vested good time credit.  ECF No. 5 at 13.

On February 11, 2011, Plaintiff was given a conduct ticket for refusing to obey an order of a staff member and refusing a program assignment.  ECF No. 1 at 6, ECF No. 5 at 19.  He was informed that he needed his annual tuberculosis test.  He refused the test and demanded to be given a chest x-ray instead.  His request for an x-ray was denied and he was told the test was mandatory.  He refused to allow the skin test to be performed.  He was found guilty of the infraction at a disciplinary hearing and was sanctioned to 30 days in segregation, loss of 7 days good time credit, loss of 20 days non-vested good time credit, and loss of privileges for one year. ECF No. 5 at 19.

Plaintiff received additional conduct reports on February 14, 2011 and February 25, 2011. ECF No. 5 at 22.  He was approached by an officer on February 14, 2011 and was told once again that he had been ordered to report for his tuberculosis test.  Plaintiff refused and told the

3

(4:11CV0569)

officer that he would kill the first person who tried to perform the test.  He was charged with refusing to accept programming and threatening another with bodily harm.  Plaintiff was found guilty of the infraction at a disciplinary hearing and sanctioned with 30 days in segregation, loss of 11 days of good time credit, and loss of 30 days non-vested good time credit.  On February 25, 2011, Plaintiff was charged with refusing to obey an order of a staff member.  ECF No. 5 at 25. He was asked by an officer to pass his food tray out of his cell, and Plaintiff declined to do so. He was sanctioned with 30 days in disciplinary segregation, and loss of 7 days good time credit. ECF No. 5 at 25.

Plaintiff asserts numerous violations of his First, Fourth, Eighth, and Fourteenth Amendment rights.  He contends his placement in segregation deprived him of his right to travel. He claims he was denied access to the courts when his law library access was limited.  Because he disputes the accuracy of the conduct charges, he contends he was falsely imprisoned in segregation.  He claims the defendants used excessive force to extract him from his cell, and held him under conditions which violated the Eighth Amendment.  Finally, he contends he was denied procedural and substantive due process.

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a

(4:11CV0569)

claim upon which relief can be granted or if it lacks an arguable basis in law or fact.[3] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

---

[3] A claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997) (overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

5

(4:11CV0569)

## III.  Law and Analysis

### A.  **Right to Travel**

Plaintiff first claims his continued placement in segregation deprived him of "his right to go to and from as he pleased."  ECF No. 1 at 7.  He, however, misunderstands the nature of the right to travel.  The Supreme Court recognized a right to travel that is essentially a right of citizens to migrate freely between states.  *See Saenz v. Roe*, 526 U.S. 489, 500 (1999).  This right includes the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, the right to be treated like other citizens of that State if permanent residence is established in the State.  It does not guarantee unrestricted access to all areas of a secure prison facility.  See *id.*

Moreover, prisoners retain only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Martin v. Kelley*, 803 F.2d 236, 240 n. 7 (6th Cir. 1986); *see Turner v. Safley*, 482 U.S. 78, 89 (1987).  Lawful incarceration legitimately requires the restriction or withdrawal of many rights and privileges, as a necessary consequence of society's need to discourage and penalize crime.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  Plaintiff's constitutional right to interstate travel necessarily was extinguished upon his conviction and imprisonment.  *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976).

(4:11CV0569)

### B. **Access to the Courts**

Plaintiff contends he was denied access to the courts when his law library time was restricted.  To state a claim for denial of access to the courts, Plaintiff must allege particular actions of Defendants prevented him from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The right of access to the courts is directly related to an underlying legal claim, without which a Plaintiff cannot have suffered injury by being shut out of court.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation."  *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  In other words, he must demonstrate "actual injury" by showing that his underlying claim was non-frivolous, and that it was frustrated or impeded by Defendants.  *Lewis*, 518 U.S. at 353; *Christopher*, 536 U.S. at 415.  Here, Plaintiff alleges only in general terms that his access to the law library was restricted.  This is insufficient to state a claim.  He must go one step further and demonstrate that the alleged shortcomings in his law library access hindered his efforts to pursue a legal claim.  *Lewis*, 518 U.S. at 353.  Absent this allegation, his claim must be dismissed.

### C. **False Imprisonment**

Plaintiff disputes the conduct charges and claims he was falsely imprisoned in segregation.  False imprisonment, however, is a state tort claim, and is not cognizable in a *Bivens* action.  *Seaton v. Sova*,  No. 1:08-cv-1131, 2009 WL 2132728, at *7 (W.D.Mich. July 10, 2009).

Even if it could be the basis for a civil rights action, Plaintiff's claim of false imprisonment would be frivolous.  To state a cause of action for false imprisonment, Plaintiff

7

(4:11CV0569)

must allege he was confined intentionally without lawful privilege, against his consent, within a

limited area for any appreciable time.  *Feliciano v. Kreiger*, 50 Ohio St.2d 69, 71 (1977); *Kaylor*

*v. Rankin*, 356 F.Supp.2d 839, 854-855 (N.D. Ohio 2005).  The substance of this claim is that the

imprisonment is false because it occurs without right or authority.  *Feliciano*, 50 Ohio St.2d at

71.  Plaintiff was already in prison pursuant to a lawful conviction at the time he received the

conduct charges.  His imprisonment is therefore legitimate and his temporary movement to a

more secure area of the prison as a disciplinary measure does not alter this fact.

   **D.  Excessive Force**

   Plaintiff contends prison officials used excessive force when they extracted him from his

cell on January 28, 2011.  As an initial matter, Plaintiff does not allege that Streeval or

Montgomery personally participated in the extraction.  He indicates Streeval arrived at his cell at

8:00 a.m. and attempted to get him to comply with the order to move.  When Plaintiff did not

comply, Streeval notified Lieutenant Johnson.  After two hours of monitoring Plaintiff and

another attempt to obtain compliance with the order to move, Plaintiff claims Johnson directed

the "force team" to remove him from his cell.  ECF No. 1 at 4.  He states that the force team

consisted of four unknown officers.  ECF No. 1 at 5.  There is no indication that Streeval

participated in the extraction.  Montgomery is the Disciplinary Hearing Officer.  Plaintiff does

not suggest he was present during the incident.

   Plaintiff cannot establish the liability of any defendant absent a clear showing that the

defendant was personally involved in the activities which form the basis of the alleged

unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*,

8

(4:11CV0569)

No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  Because there is no indication that

either Streeval or Montgomery took part in the cell extraction, Plaintiff's excessive force claims

against these Defendants are dismissed.

Plaintiff alleges the force team followed Lieutenant Johnson's orders during the cell

extraction.  When prison officials are accused of using excessive physical force in violation of

the Eighth Amendment, the Court considers "whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v.

McMillian, 503 U.S. 1, 7 (1992).  Not every physical interaction with a prison guard gives rise to

a federal cause of action.  Id.

> [O]fficials confronted with a prison disturbance must balance the threat unrest
> poses to inmates, prison workers, administrators, and visitors against the harm
> inmates may suffer if guards use force.  Because prison officials must make their
> decisions in haste, under pressure, and frequently without the luxury of a second
> chance, we must grant them wide-ranging deference in the adoption and execution
> of policies and practices that in their judgment are needed to preserve internal
> order and discipline and to maintain institutional security.

Combs v. Wilkinson, 315 F.3d 548, 557 (6th Cir. 2002) (first alteration in original) (citations and

internal quotation marks omitted).  The issue is therefore not whether the use of force was

absolutely necessary in hindsight.  Instead, the Court must determine whether the use of force

could plausibly have been thought necessary, or if it showed such wantonness with respect to the

unjustified infliction of harm that cannot be seen as anything but a willingness for it to occur.

Whitley v. Albers, 475 U.S. 312, 321 (1986).  To do this, the Court should consider the need for

application of force, the relationship between that need and the amount of force used, whether the

threat was reasonably perceived by the responsible officials, any efforts made to moderate the

(4:11CV0569)

severity of a forceful response, and the extent of injury suffered by an inmate.  *Hudson*, 503 U.S. at 7; *Combs*, 315 F.3d at 557.

Even liberally construed, Plaintiff's allegations do not suggest a malicious, sadistic, or wanton infliction of pain.  The prison officials made several verbal requests for Plaintiff to wake and move so that they could verify he was, in fact, under the blanket.  Plaintiff ignored the officers.  They waited for two hours for him to comply but he did not respond to their demands. When the confrontation avoidance measures were not successful, the officials utilized tear gas, and placed him in handcuffs and shackles.  He was taken to the showers where his clothing was cut off.  He contends he was then taken to a dry cell where he was kept, still in the restraints until around 2:00 p.m.  While Plaintiff contends he was "roughly handled," he does not allege he suffered any physical injury.  He does not describe wanton or malicious conduct that can only be characterized as an unjustified infliction of harm.

## E.  Eighth Amendment - Conditions

Plaintiff alleges that after he was extracted from his cell, he was subjected to cruel and unusual punishment.  Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.*  Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8.  Routine discomforts of prison life

10

(4:11CV0569)

do not suffice.  *Id.*  Only deliberate indifference to serious medical needs or extreme deprivations

regarding the conditions of confinement will implicate the protections of the Eighth Amendment.

*Id.* at 9.  Plaintiff must also establish a subjective element showing the prison officials acted with

a sufficiently culpable state of mind.  *Id.*  Deliberate indifference is characterized by obduracy or

wantonness, not inadvertence or good faith error.  *Whitley*, 475 U.S. at 319.  Liability cannot be

predicated solely on negligence.  *Id.*  A prison official violates the Eighth Amendment only when

both the objective and subjective requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834

(1994).

Plaintiff fails to establish the objective component of his claim.  He contends he was

provided with a pair of ill-fitting underwear, and left in a chilly cell for approximately three to

four hours.  He states he was not given lunch, and did not have access to a restroom.  While these

conditions may be unpleasant, Plaintiff was not held under these conditions for an extended

period of time, and they did not deprive him of the minimal civilized measure of life's

necessities.  *Rhodes*, 452 U.S. at 347.  Plaintiff does not state an Eighth Amendment violation.

**F.  Due Process**

Finally, Plaintiff contends he was denied due process.  The Fifth Amendment provides

that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."

U.S. CONST. AMEND. V.  In addition to setting the procedural minimum for deprivations of life,

liberty, or property, the Due Process Clause bars "certain government actions regardless of the

fairness of the procedures used to implement them."  *Daniels v. Williams*, 474 U.S. 327, 331

(1986).  It does not prohibit every deprivation by the government of a person's life, liberty or

11

(4:11CV0569)

property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

       The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349 -1353 (6th Cir. 1996). The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. *Id.* Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983). Many procedural due process claims are grounded on violations of state-created rights, or rights that do not enjoy constitutional standing. *See id.* The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent the arbitrary use of government power. *Howard*, 82 F.3d at 1349. Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. *Id.* at 1350. Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

(4:11CV0569)

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used.  *See Daniels*, 474 U.S. at 331.  Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action.  *Id.*  It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation.  *Howard*, 82 F.3d at 1349.

### 1.  **Procedural Due Process**

Plaintiff claims he was sanctioned with placement in segregation and loss of property without due process.  Prisoners have narrower liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed.  *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  *Id.* at 485.  "[T]he Constitution

13

(4:11CV0569)

itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221 (citation omitted).

Generally, unless the disciplinary action is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no liberty or property interest will be found in the case. *Sandin*, 515 U.S. at 484. Where good time credits are at stake, due process requires only that a prisoner receive:  1) written notice of the hearing at least twenty-four hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Furthermore, some evidence must exist to support the disciplinary conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985).

Plaintiff does not provide much information in his complaint about the disciplinary hearings. He does not dispute the veracity of the factual allegations in the conduct reports, but claims his actions should not have been considered to be conduct violations. He contends "Montgomery intentionally found Allah Burman guilty." ECF No. 1 at 6, 7. Plaintiff provides written copies of the Disciplinary Hearing Reports for each of his conduct charges which included the evidence on which the Hearing Officer relied to arrive at his determinations. ECF No. 5. These documents indicate the incident reports were read aloud at the hearing and Plaintiff was given the opportunity to comment on the charges. At four of the seven hearings, Plaintiff

14

(4:11CV0569)

responded to the charges by saying he had no comment and that he did not understand.[4]  ECF No. 5 at 6, 8, 10, 13, 19.  He refused to attend two hearings, and denied the charges at another.  As the Hearing Officer's decisions were supported by some evidence, Plaintiff's procedural due process rights were not violated.

**2.  <u>Substantive Due Process</u>**

Plaintiff's substantive due process claim is also subject to dismissal.  Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right.  *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993).  In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience."  *See United States v. Salerno*, 481 U.S. 739, 746 (1987).  These actions are unconstitutional regardless of the procedural protections provided.  *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent.  *Id.* at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Id.* (citation and internal quotation marks omitted).

Plaintiff's substantive due process claim is based upon conduct alleged to be so severe that it shocks the conscience.  Where a specific Amendment provides an explicit source of

---

[4] A psychological evaluation was conducted to determine if Plaintiff was competent to participate in the disciplinary process.  The psychologist reported back that "his thoughts were coherent, logical and he understands fully his behavior, and the consequences of his behavior."  Montgomery concluded that Plaintiff was attempting to disrupt the disciplinary process.  ECF No. 5 at 6.

(4:11CV0569)

constitutional protection against a particular sort of governmental conduct, "that Amendment, not

the more generalized notion of 'substantive due process,' must be the guide for analyzing these

claims."  *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  Plaintiff asserted a substantially

similar claim under the Eighth Amendment, which was already considered by this Court.  His

substantive due process claim is dismissed as duplicative of his Eighth Amendment claim.

### IV.  Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e).  The court certifies,

pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good

faith.[5]


IT IS SO ORDERED.


 August 11, 2011                              /s/ Benita Y. Pearson
Date                                         Benita Y. Pearson
                                             United States District Judge

---

[5]  28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is
not taken in good faith.

16